We'll move to case number five. Ms. Matrick? Sorry, I named you earlier. You were not involved in the other case. Good morning, Your Honor. Brooke Stevens for Mr. Hamdan. If it pleases the Court, we request that this Court revand the case to the District Court for a new trial in its entirety. The District Court abused its discretion when it granted the government's motion to quash the trial subpoenas of Trooper Glasner and Sergeant Fish. Doing so prevented Mr. Hamdan from offering testimony relevant to a key element of the crimes he was charged with, namely the element of knowledge. Trooper Glasner and Sergeant Fish were police officers involved in a prior arrest of Mr. Hamdan in 2012 in Wisconsin. Mr. Hamdan intended to offer the testimony of these witnesses to establish that he was not aware that synthetic cannabinoids were controlled substances. This would have materially impacted Hamdan's defense at trial if he had been able to establish that he did not know that the substance that he was distributing was either a controlled substance or an analog during the time frame described in the 2016 indictment. It would have been a defense to his guilt for the charged offenses. I wanted to first talk about the element of knowledge itself. When a controlled substance is an analog, the government has to establish that the defendant knew that he was dealing with a substance regulated under the Section 841. Under McFadden, the government must show one of two things. They must show that either Mr. Hamdan knew the substance he was distributing was controlled under the Controlled Substances or the Analog Act, or that he knew the specific analog that he was distributing. The government never even attempted to make that second argument. There was no testimony to try to show that Mr. Hamdan knew that XLR-11, the specific substance that he was charged with, that Mr. Hamdan knew that it was XLR-11. And in fact, most of the testimony in the case talked about the substances as K2 or Spice, because that is what it's known as on the street, if you will. And it can encompass a wide variety of different specific chemical substances, some of which, at any given time, were or were not illegal during that time frame in the early 2010s, where it was changing from where those things weren't illegal to finally now, almost everything is illegal as far as I can understand it. And during that time frame, there was a lot of specific things that were, you know, we're at a point where everything, as far as I understand it, is illegal. How much money did they find in the cash in his car when they stopped it? I believe it was $120,000, but I don't recall off the top of my head. That's for illegal drugs, right? Well, Your Honor, there was evidence that was offered that there was a sale of a dollar store or a similarly named entity, and there was also a later dropped claim for some of that money from a third party. So, as I was saying— How about what did they find in the public storage? They found a great deal of controlled substance analog, Your Honor. They found a great deal of the product. Now, as I was saying before, the product used to be a legal product. You could actually purchase it at the 7-Eleven, at the gas station, et cetera. And that was one of the things that the defense was barred from bringing up at trial, and the only reason it came out at all was that one of the government's witnesses mentioned it on the stand, that this product used to be legal. Now, whether or not a product is legal doesn't necessarily mean that the cops approve of said product. So, that kind of gets to the point of why we wanted to bring the officers in on this case. You know, it's his lack of knowledge that XLR, whatever, is a controlled substance. It's not a defense to the crime. What would be the relevance of the trooper's testimony? Well, Your Honor, the relevance of the trooper's testimony is multifold. At the time when he was stopped, he believed that the K-2, in 2014, the crimes for which he was charged in the Federal offense, he believed that the K-2 that he was dealing with was legal. That is part of the reason that he believed that is because he had been previously stopped and that substances had been taken from him that he considered to be K-2. Now, again, it was a different technical substance, but for all intents and purposes and for his knowledge and for most people's knowledge, it's just K-2 or spice. And he had had that taken from him. He had been arrested. They had been referred to the DEA. And then they had then, once tested, released him and returned his property. Your Honor, even if Hamden had prevailed and the troopers had testified and even if they had said, as I fear it seems pretty unlikely, that they told Hamden that the previous analog was legal, what are the chances that a jury would believe that Hamden had no idea that this stuff was illegal after so much news coverage about these synthetic substances being added to the controlled substances list? Well, Your Honor, at the time that he was arrested in 2014, I don't know that you had the same kind of general public knowledge that you have now. There are more cases now that are in the news about these substances and similar substances and other additives that have been added to such substances. But at the time, in 2014, when he was arrested, I don't know that that would be a valid argument to make on behalf of the government. Now, if they were to make that argument, I just think at the end of the day, he should have been able to make that argument. And as Your Honor says, that you're not certain that the police officers would or would not have testified in that particular manner, and that was one of the arguments that the government raised in their brief, that, well, the officers would have helped the government anyway, so you didn't need them. If that's true, then the parties are in agreement that the officers should be called to the stand to be able to testify. If they were only going to hurt Hamden, there's no reason for the government to have tried to keep them from testifying. Now, of course, there was a wealth of evidence that he was hiding his venture, that he knew what he was doing was illegal, that he knew what he was selling was a controlled substance. His lackeys testified. They knew the drug was illegal. I mean, it's very difficult to imagine how the underlings would know and the boss would not. And, look, the crackdown on the synthetic drugs was all over the news for years. I mean, for years. It would be very hard to imagine that someone in the business didn't know. It really, you know, I don't know. Very difficult. Well, Your Honor, it wasn't just this particular arrest. If you looked at the remainder of the court record, we actually did have other subpoenas for other officers from other arrests that he was never charged with those particular crimes. And that would be the sort of substance of the defense would be that he was continually pulled over and stopped and, in his view, harassed for what he viewed as a legal but disfavored business. Now, he was making a lot of money doing it. I fully admit that. Making a lot of money on a legal business? He thought, and based on his experiences, being pulled over, harassed, having his property taken, and then having his property given back to him and only being charged with whatever actual marijuana was in the car, why wouldn't he come to believe that it was actually legal? If that's his experience. Because years had passed. But that's the whole point, Your Honor, and that would be an argument that would be able to be had at trial, but we weren't ever even able to make that argument, and we weren't able to put those officers on the stand. So, Your Honor, there were five arguments that were made by the government in their brief as to why our arguments were invalid. The first that I wanted to talk about was the waiver argument. And as I set forth in the brief, the argument that he kept a low profile due to that overzealous policing, as I had previously talked about, was not to hide the criminal activity. It was due to what he viewed as essentially police harassment. And this was brought up at the final pretrial, and this was talked about at trial. The government talks about the fact that it believes that the testimony of the officers logically supports Hamden's defense and is neither tangential or that it does not support the defense, and it's neither tangential nor collateral. But please keep in mind that the prejudicial effect of the offered evidence must substantially outweigh its probative value in this case. And as I've explained, I don't think that you can say that the police officers coming in  where our entire argument is premised on Mr. Hamden avoiding having to testify by using his Fifth Amendment rights. And the only other way that he can get any of that information in is through these officers. I see that my time is close to an end. It's not close to an end. You're over in about a minute. Thank you very much. Thank you, Your Honor. May it please the Court. My name is Heidi Mantreck, and I represent the United States in this appeal. The district court did not abuse its broad discretion in limiting the trial evidence in this case. The evidence that was proffered by the defendant regarding the Wisconsin troopers' testimony about a traffic stop in 2012 was simply not relevant to help establish the defense that the defendant did not know that the substance he possessed in 2014 was controlled. I really wonder why you moved to quash the testimony of the troopers. I find it very hard to imagine that that testimony would have been the least bit helpful to Mr. Hamden. Your Honor, I agree that I don't think the testimony, if it was understood and came in very clearly, would have been helpful for the defense. But the government has an independent obligation to ensure that the jury is not confused with collateral issues, and that was the primary reason for seeking to quash these subpoenas. The testimony would have been effectively the testimony of law enforcement officers in Wisconsin opining on the status of the law in relation to a different substance at that time, and that very well could have confused the jury as to what the issues were in dispute in the trial regarding this substance in 2014. What do you think was the best proof that he knew the substance he was telling was illegal? Well, among the points that Your Honor had raised, I would agree with number one, his co-conspirators knew that they were dealing with a controlled substance. Number two is his concealment. The fact that when he's found with a key to a storage unit that is later found to contain, as Your Honor was wondering, powders containing this XLR-11 substance, the finished K2 product, all of the other materials needed to manufacture the finished K2 product, including acetone, flavoring, these Damiana leaves, all of those were found in these storage units, and yet when he was confronted with the fact that he has the key to it in his pocket, he denies knowledge of the existence of those storage units and doesn't know what's going on there, which is inconsistent with the defense that he thought what he was doing was completely legal. So it's the concealment, it's the fact that he rents the storage units in other people's names, and it's the fact that he conducts his business entirely in cash and conducts it in a manner that an expert testified was consistent with that of an illicit business. For all of those reasons, the jury had ample grounds to conclude that he knowingly possessed a substance that was controlled. And because the district court did not abuse its discretion in making the evidentiary ruling that it did in determining that the risk of confusing the jury was too great and substantially outweighed any probative value that the evidence could have offered, the district court did not abuse its discretion, did not abuse its discretion in subsequently denying the defendant's motion for a new trial on the same ground. For these reasons, we would respectfully ask that the judgment of the district court be affirmed. Thank you, Ms. Manischek. And I apologize for three times misusing your name for other counsel. Thank you, Your Honor. Thanks to both counsel in the cases taken under advisement. We move to the last case.